UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD J. S.,[1]

                         Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

DECISION AND ORDER

20-CV-1415 (CJS)

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Aug. 13, 2021, ECF No. 15; Def.'s Mot., Dec. 27, 2021, ECF No. 16.

Plaintiff maintains that he is entitled to reversal of the Commissioner's decision because the Administrative Law Judge ("ALJ") erred by failing to account for Plaintiff's non-severe physical impairments in his residual functional capacity ("RFC") determination, and because the ALJ's determination was not based on substantial evidence. Pl. Mem. of Law, Aug. 13, 2021, ECF No. 15-1. The Commissioner maintains that the ALJ did not commit error, and that his decision was supported by substantial evidence. Def. Mem. of Law, Dec. 27, 2021, ECF No. 16-1.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 15] is denied, and the Commissioner's motion [ECF No. 16] is granted. The Clerk of Court is directed to close the case.

## BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff's Application

Plaintiff protectively filed his DIB application in May 2017, alleging a disability onset date of November 2, 2016. Transcript ("Tr."), 158, Apr. 13, 2021, ECF No. 14. Plaintiff alleged that his ability to work was limited by his hearing loss and back injuries. Tr. 178. In September 2017, the Commissioner determined that Plaintiff was not disabled, and did not qualify for DIB benefits. Tr. 87. Thereafter, Plaintiff requested a hearing before an ALJ. Tr. 89.

Hearing Before the ALJ

Plaintiff's request was approved, and Plaintiff appeared with counsel for a hearing before the ALJ in Buffalo, New York in June 2019. Tr. 30. An impartial vocational expert ("VE") participated via telephone. Tr. 53–70. During his opening statement, Plaintiff's counsel noted that Plaintiff "was an individual closely approaching retirement age" with approximately thirty years' experience as a field superintendent for construction jobs. Tr. 33. Counsel stated that the reason Plaintiff retired early was that:

> ATTY: He was having trouble hearing and communicating with guys on his job site . . . . [H]e was just unable to hear people talking to him on the job to give them updates on the progress of the job and so forth. At the same time,

>he also had issues with his low back. He had low back pain beginning around . . . July 16, 2015, hurt himself while bending to lift some steel beams on the job . . . .

Tr. 33–34.

After taking Plaintiff's testimony, as well as confirming with the impartial VE that Plaintiff would be entitled to benefits under the Commissioner's regulations if he is limited to light work, the ALJ shared his view of the central question in Plaintiff's case:

>ALJ: . . . . If I find [a limitation to] light [work], I think I'm going to grant the case.
>
>ATTY: Oh, okay.
>
>ALJ: If I find light, that's the question.
>
>ATTY: Yes.
>
>ALJ: Is there an exertional limit or is there not. The hearing question is a lot murkier because I think he could get different hearing aids in better function. And if it's true there's no exertional limitation, then I think they're correct to deny at medium [exertional level].
>
>ATTY: Okay.
>
>ALJ: I think that's the right thinking, but if I find a physical limitation to light, I think he's well on his way to getting a favorable decision.
>
>* * *
>
>ALJ: That's my basic take on it, and I'm not sure if light's appropriate. I don't think it is for the back –
>
>ATTY: Okay.
>
>ALJ: -- because I don't think that's durationally significant. And I don't see any thing in the cardio that would limit the light, but that's where I was coming up with the light –
>
>ATTY: Okay.

> ALJ: -- is the fact of the cardio. So that's where we stand, and I'm not quite sure what I'm going to do with this case.

Tr. 71–72.

The ALJ's Decision

On June 21, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 25. In his decision, the ALJ found that Plaintiff met the special insured status requirements for DIB benefits through March 31, 2020. Tr. 17. At step one of the Commissioner's "five-step, sequential evaluation process,"[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of November 2, 2016. Tr. 18. At step two, the ALJ determined that Plaintiff's bilateral sensorineural hearing loss constitutes a severe impairment. Tr. 17. The ALJ also found that Plaintiff had the additional medically determinable impairments of lumbar spine degenerative disc disease, coronary artery disease, and obesity, but found these conditions were non-severe and did not significantly limit Plaintiff's ability to perform basic work activities. Tr.

---

[2] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB benefits. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130. In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

18–20. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to perform a full range of work, with the following non-exertional limitations: Plaintiff "can frequently hear and must avoid exposure to very loud work environments . . . ." Tr. 20. At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a construction site superintendent. Tr. 23. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found that Plaintiff would be able to perform such jobs in the national economy as dining room attendant, patient transporter, and general laborer (fabricated plastics). Tr. 23–24. Hence, the ALJ concluded that Plaintiff *is not* disabled. Tr. 25.

On August 3, 2020, the Commissioner's Appeals Council denied Plaintiff's request to review the ALJ's decision. The ALJ's decision thus became the "final decision" of the Commissioner.

LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

than 12 months.'" 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

## DISCUSSION

As indicated above, Plaintiff maintains that the ALJ erred by failing to account for Plaintiff's non-severe physical impairments in his residual functional capacity determination, and that the ALJ's determination was not based on substantial evidence. After a thorough review of the record and the papers submitted in this matter, the Court agrees with the Commissioner that the ALJ did not err, and that his decision was supported by substantial evidence.

<u>The ALJ did not commit legal error regarding Plaintiff's non-severe impairments</u>.

The ALJ's decision includes a long discussion at step two of the five step evaluation process about why he found Plaintiff's obesity, lumbar spine degenerative disc disease ("back condition"), and coronary artery disease ("heart condition") to be non-severe impairments.

To begin with, the ALJ stated that Plaintiff has a history of obesity, but that there is no evidence in the record "of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." Tr. 18.

With respect to Plaintiff's back condition, the ALJ observed that after Plaintiff hurt his back in July 2015, he made only five visits to the physical therapist before he was able to end his treatments with "no difficulty golfing, no difficulty bending to dress, no difficulty transitioning between sitting and standing, and he was able to drive ten hours without provocation." Tr. 18 (citing Tr. 239). The ALJ also noted that Plaintiff self-reported on his disability application that he had some difficulty bending, squatting, and lifting twenty pounds consistently, but that he was still able to care for himself, prepare meals, perform minor household maintenance and chores, clean, mow the grass, garden, and use the snow blower. Tr. 18 (citing 187–94). Similarly, the ALJ observed that Plaintiff's consultative medical examiner – Dr. David Brauer, M.D. – opined both that Plaintiff had no limitations in his ability to sit, stand, walk, climb, push, pull, lift, or carry objects, and that Plaintiff's physical examination findings from 2017 through 2019 were "benign." Tr. 19 (citing, *inter alia*, 297).

Regarding Plaintiff's heart condition, the ALJ acknowledged that Plaintiff was admitted to the hospital for four days due to a heart attack in February 2018. Tr. 19. However, the ALJ also pointed out that Plaintiff's ten pound lifting restriction was limited to one month post-hospitalization "to guide [Plaintiff]'s behavior in the days following surgery to aid the process of healing." Tr. 19. The ALJ also noted that Plaintiff's follow-up appointments with both the cardiologist and his primary care physician indicated that "he was cardiovascularly stable." Tr. 19.

Plaintiff argues that the ALJ erred in formulating his RFC determination because, even if he found Plaintiff's obesity, back condition, and heart condition were non-severe, he was nevertheless required to consider the non-severe impairments for the RFC. Pl.

Mem. of Law at 10–11 (citing 3 cases from this District in support). Plaintiff states that "[a]lthough the ALJ was unsure whether the non-severe impairments on their own justified a limitation to light exertion work, he should have considered the combination of these impairments on Plaintiff's physical ability to work and accounted for such in the RFC." Pl. Mem. of Law at 11.

*Legal Principles*

20 C.F.R. § 404.1520(a)(4)(ii) provides that at the second step of the ALJ's sequential evaluation process, the ALJ must examine the evidence to determine whether the claimant has a "severe impairment." An impairment, or combination of impairments, is severe if it "significantly limits" the claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities" include "walking, standing, sitting, lifting, pulling, reaching, carrying, or handling[,] . . . seeing, hearing, and speaking, . . . [u]nderstanding, carrying out, and remembering simple instructions[,] . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations[,] . . . [d]ealing with changes in a routine work setting." § 404.1522(b)(1)–(6).

The Second Circuit has stated that: "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended to screen out the very weakest of cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Nevertheless, the burden is on the claimant to provide sufficient evidence to demonstrate to the ALJ that a severe impairment exists. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (stating the Commissioner "has express statutory authority to place the burden of showing a medically determinable impairment on the claimant"). Moreover, an ALJ's failure to identify a severe impairment at Step Two

is harmless where he considers the impairment at subsequent steps of the five-step evaluation process. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).

*Application*

Here, Plaintiff has failed to present sufficient evidence to demonstrate that his obesity, back condition, and heart condition – either singly or in combination – significantly interfered with his ability to perform basic work activities.

To begin with, the Court agrees with the ALJ that there is nothing in the record to indicate that Plaintiff's obesity limited his capacity for basic work activities.

With respect to Plaintiff's back condition, there is likewise little in the record to support a finding of significant limitation. Plaintiff's physical therapist stated in August 2015 that Plaintiff had "fully resolved his previous complaints of low back pain" stemming from his July 2015 injury, had restored full lumbar range of motion in all planes, and had normal core strength and stamina. Tr. 239. The consultative medical examiner, Dr. Brauer, examined Plaintiff in 2017 and concluded that his back condition did not impose "limitation in [Plaintiff]'s ability to sit, stand, walk, climb, push, pull, lift, or carry objects." Tr. 297. Lastly, several treatment records from Plaintiff's primary care provider, UBMD Physicians Group, indicate that Plaintiff walks with a normal gait and that his motor strength is grossly intact (March 2018, Tr. 347); "is staying active cutting the grass and golfing and walks with his wife daily" (May 2018, Tr. 320); and experiences "[n]o joint pain, joint swelling, or limited range of motion" (November 2018, Tr. 378).

As to Plaintiff's heart condition, the ALJ acknowledged that Plaintiff was hospitalized with a heart attack on February 16, 2018, and had a stent placed in his

coronary artery. Tr. 401. However, at Plaintiff's follow-up appointment with nurse practitioner Virginia Hart ("N.P. Hart"), N.P. Hart indicated that part of Plaintiff's care plan following the heart attack was a "[s]low and moderate increase in activity." Tr. 371. Although Plaintiff "was advised not to lift more than 10 pounds for the" month following his appointment, thereafter he would have "no restrictions." Tr. 371.

By March 30, 2018 – just over a month after his heart attack – Plaintiff reported to his nutritionist that his daily activity level was moderate, and that he was medically cleared for cycling, golf once a week, and "remodeling activities" daily. Tr. 383. In May 2018, Plaintiff returned to his primary care provider, where he was examined by Dr. James Yossef, M.D., who noted that Plaintiff "appears to be doing well . . . . [and] is staying active cutting the grass and golfing and walks with his wife daily without symptoms," and that Plaintiff's cardiac exam was regular. Tr. 320, 322. In November 2018, Plaintiff was seen again by N.P. Hart, who also noted that Plaintiff "is doing very well, returning to all usual activities," and that his cardiac exam was regular. Tr. 376–77.

In short, there is no indication in the record that Plaintiff's obesity, back condition, or heart condition significantly limited his physical or mental ability to do basic work activities for a duration sufficient to satisfy 20 C.F.R. § 404.1509. Accordingly, the Court finds that the ALJ did not err by declining to incorporate limitations to accommodate these conditions into his RFC determination.

<u>The ALJ's RFC determination is supported by substantial evidence</u>.

Plaintiff also argues that in arriving at the step two severity determination and the assessed RFC, the ALJ relied on stale opinion evidence and his own lay opinion. Pl. Mem. of Law at 11–12. Plaintiff argues that consultative medical examiner Dr. Brauer's opinion

was stale because he examined Plaintiff in July 2017, nearly seven months prior to Plaintiff's heart attack. He argues that the opinion of state agency medical consultant R. Pradhan, M.D., was stale because Dr. Pradhan's records review was conducted in August 2017, nearly six months prior to Plaintiff's heart attack. Further, he maintains that because there are no other opinions upon which the ALJ could have relied to formulate his RFC, he improperly relied on his own lay opinion to draw conclusions about the raw medical data. Pl. Mem. of Law at 14–17.

The Commissioner counterargues that "there is no evidence in the record that Plaintiff's [heart attack] led to any long-term functional limitations and thus, the ALJ appropriately relied on these opinions in the context of the overall record." Def. Mem. of Law at 16.

*Legal Principles*

The regulations provide that the determination of a claimant's RFC is an issue reserved to the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (discussing 20 C.F.R. § 404.1527(d)(2)). *See also* 20 C.F.R. § 404.1546. The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The burden is on the claimant to provide sufficient evidence. *Id.*

With respect to medical opinion evidence, the Second Circuit has not recognized "an unqualified rule that a medical opinion is superseded by additional material in the record." *Camille v. Colvin,* 652 F. App'x 25, 28 n.4 (2d Cir. 2016). Rather, the key question is "whether there is substantial evidence to support the [Commissioner]'s determination" that a claimant is not or was not disabled during the relevant period. *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) (citing *Valente v. Secretary of Health and Human*

*Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)). *See also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.") (internal citation omitted).

The Second Circuit has consistently warned ALJs making an RFC determination not to "arbitrarily substitute [their] own judgment for competent medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Moreover, remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [a claimant's] functioning on which the ALJ relied," and the ALJ failed to analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020). However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (affirming what had originally been held summarily in *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

*Application*

Having thoroughly reviewed the record, the Court agrees with the Commissioner that the ALJ's decision in this case is not based on stale opinion evidence. Further the ALJ's RFC determination is not based on his lay assessment of the evidence, but rather on substantial objective and opinion evidence in the record.

First, there is nothing in the record to indicate that the findings the ALJ relied upon in the opinions of Dr. Brauer and Dr. Pradhan were stale in the sense that they were contradicted by more recent evidence. When Dr. Brauer examined Plaintiff in July 2017, he noted that Plaintiff had two chief complaints: chronic low back pain, and a hearing impairment. Tr. 294. Dr. Brauer did not formulate an opinion regarding Plaintiff's hearing impairment, but he did state that "[o]n the basis of the examination, there is no limitation in the claimant's ability to sit, stand, walk, climb, push, pull, lift, or carry objects." Tr. 297. As indicated in the discussion above, there is nothing in the record which would indicate that Plaintiff's heart attack in February 2018 would have in any way altered that prognosis. *See, e.g.,* Tr. 371 (N.P. Hart's notes from March 2018 indicating that Plaintiff's care plan included the limitation that he not lift over 10 pounds for one month, but that after that there would be "no restrictions"). Similarly, the ALJ's primary reference to Dr. Pradhan's opinion was regarding his assessment of Plaintiff's hearing limitations, which were supported by Plaintiff's audiogram findings, which did "not show a worsening of the [Plaintiff]'s hearing from 2009 through 2019 . . . ." Tr. 22 (citing, *inter alia*, Tr. 437–38, the 2019 audiogram that showed an *improvement* in Plaintiff's hearing).

Second, the ALJ considered all medical opinions that were in the record regarding Plaintiff's exertional limitations, and concluded that they were consistent with the medical evidence in indicating that Plaintiff could perform the full range of exertional work. As discussed above, Dr. Brauer's and Dr. Pradhan's respective opinions are consistent with evidence in the record. For instance, Plaintiff's physical therapist indicated in August 2015 that Plaintiff had recovered range of motion after his back injury (Tr. 239); physical exams from Plaintiff's primary care physician, Dr. Vito Palumbo, indicated in 2016 and 2017 that

14

he had seen Plaintiff for a "general adult medical examination without abnormal findings" other than hyperlipidemia, high glucose, and obesity (Tr. 259–268); and follow-ups after Plaintiff's heart attack do not recommend any restrictions on his physical activity (Tr. 371, from N.P. Hart). Perhaps most striking, Plaintiff's primary care physician, Dr. Palumbo, submitted a medical source statement dated April 2019 which indicated that Plaintiff suffered from hearing loss, but which marked the questions regarding Plaintiff's functional limitations in a competitive work setting as not applicable. Tr. 23 (discussing Tr. 441–44).

In short, the ALJ weighed the available evidence – including medical opinions – and made an RFC finding that was both supported by substantial evidence, and consistent with the record as a whole. *See, e.g., Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (citing *Matta*, 508 F. App'x at 56)).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 15] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 16] is granted. The Clerk is directed to close this case.

DATED:    September 19, 2022
          Rochester, New York

                                          HON. CHARLES J. SIRAGUSA
                                          United States District Judge